**RIPPEL, Extrx, Plaintiff, v RIPPEL, et, Defendants.**

Probate Court, Franklin County.

No. 120819.  Decided June 18, 1947.

**34**

Hugh Huntington, Columbus, on behalf of Petitioners.
Webb Cowan and Harold Adams, Columbus, on behalf of Wilbur Rippel and Norma G. Browne.

## OPINION

By McCLELLAND, J.

This matter comes before this Court upon the application for a declaratory judgment as to certain matters mentioned therein, and which largely involves the construction of the will of Anna K. Rippel, deceased.

The testimony discloses that George and Anna Rippel were husband and wife. Anna Rippel died June 28, 1938, leaving a last will and testament, and was survived by her husband, George J. Rippel. George J. Rippel died on July 16, 1946, leaving a last will and testament, by the terms of which Harriet Rippel, whom he married in 1941, was named as his sole and only devisee or legatee of said will.

The will of Anna K. Rippel was admitted to probate in the Probate Court of Franklin County, Ohio, on July 2, 1938, and George J. Rippel qualified as the executor thereof. Item 2 of the will of Anna K. Rippel contains the following language:

"**Item II.** All of the rest and remainder of my estate, both real and personal, of whatsoever kind or description and where-

soever situate, which I may own or have the right to dispose of at the time of my death, I give, devise and bequeath to my husband, George J. Rippel, for and during his natural life. However, my said husband is hereby given full power and authority to sell and convey any part or all of said real estate and personal property at any time during his natural lifetime in such manner as he may desire and use such portion or portions of the proceeds of such sale or sales and in such manner as he may desire."

Item III contains the following language:

"**Item III.** After the death of my said husband I give, devise and bequeath such portion, or all, of said real estate and personal property as may be undisposed of by my said husband under the authority give him in Item II of this will, to my two children, Norma G. Browne and Wilbur M. Rippel, in equal shares, to each an equal one-half part thereof."

The first question which the court must determine is what interest, if any, George Rippel had in the property passing under the will of his deceased wife. It is admitted by all parties concerned that George Rippel had a life estate, but with an unlimited power of sale, and to use such portion of it as he might desire. Although it is admitted by all parties that George Rippel had a life estate, this position is fortified by the decisions of the various courts of Ohio, the first of which the case of **Baxter v Bowyer,** reported in **19 Oh St page 490,** also **Johnson v Johnson, 51 Oh St, page 446, Widows' Home v Lippardt,** reported in **70 Oh St page 261,** and **Tax Commission v Oswald,** reported in **109 Oh St page 36.**

We also have decisions of inferior courts involving similar cases, one of which is the case of Grob., executor v Grob., et al., reported in 26 N. P. new series, page 493. Also the case of **Cotterman et al. v Heeter,** reported in **15 Abs. page 65.**

The above cases all bear a very marked similarity to the case at bar.

One of the latest cases decided by an inferior court was that of **Von Dohre v Von Dohre,** reported in **34 O. O. page 117.** All of these cases involve the provision of a will by which a power of sale is given to the life tenant.

The decision of the Supreme Court in the case of **The Widows' Home v Lippardt,** reported in **70 Oh St page 261,** contains probably the most elaborate discussion of such a situation as is found in any of the reports. In that decision the court discusses the distinction between a life estate by impli-

cation and one expressly given. It is to noted that under the will now under consideration, there is an express creation of a life estate with an unqualified power of sale. At page 284 of the report above referred to, the court uses the following language:

"A power of disposal is annexed by "A" to his bequest to "B". The effect of this depends upon whether it is a qualified or an unqualified power. If it is an absolute and unqualified power, it really neither takes from, nor adds to, the amount of the estate previously given, though there be a gift over. It would be merely equivalent to adding words of inheritance, making the gift to "B" and his heirs and assigns. But those words were implied before. The law presumes in such case, that a testator superadds the unlimited power of disposal, to make his intention as emphatic and unequivocal as possible."

The gift over in such case, is regarded as repugnant to and controlled by prior provisions. There is nothing to go over. A man can not give the same thing twice. Having given it once, it is not his to give again. Such a devise comes within the principle of the class of cases where a testator gives an estate of inheritance, and then undertakes to provide that the devisee shall not alien the property; or that it shall not be taken for his debts; or that he shall dispose of it in some particular way indicated; provisions which are powerless to control the prior gift.

"But where the power of disposal is not an absolute power, but a qualified one, conditioned upon some certain event or purpose, and there is a remainder or devise over, then the words last used do restrict and limit the words first used, and have the force and efficacy to reduce what was apparently an estate in fee to an estate for life only. Thus: "A" gives an estate to "B", with the right to dispose of as much of it, in his lifetime, as he may need for his support, and if anything remains unexpended at "B's" death, the balance to go to "C". Here there may be something to go over. "B" is to dispose of the estate only for certain specified purposes. He can defeat the remainder, only by an execution of the power. The clear implication of such a bequest, taking all its parts together, is that "B" is to possess a life estate. Here a life estate is implied, and is not expressly created.

"But "A" makes this devise: 'I give to "B", my estate to have and to hold during his lifetime and no longer, with the right to dispose of all the same during his liftime, if he pleases to do so, and any unexpended balance I give to "C". Here a life estate is expressly created, instead of arising by implication. Here, an absolute and unqualified power of disposal annexed, does not enlarge the estate to a fee. Where an estate is expressed, it need not be implied. An absolute control does not amount in such case to an absolute owner-ship. There is no conflict between the three parts of such a devise. Each clause in the combination may be literally exe-cuted. They are in no wise inconsistent with each."

Now, since George Rippel had be express terms, a life estate only, but with power of sale and use of the proceeds thereof, what is the character of the interest George Rippel had in the property in which he had a life estate? The Su-preme Court in the case of Johnson v Johnson above men-tioned, discusses the quantum of the estate possessed by the remaindermen, and also the character of the interest ac-quired by the life tenant when he has a power of sale. At page 460 of **Vol. 51, Ohio State Reports**, the court in discussing that case uses the following language:

"We regard this rule as applicable here, and that while the widow was given the legal title with full possession, and power to use, dispose of and consume the estate, for her life support, the duty rested upon her in the nature of a trust, to have due regard for the rights of those in remainder, as to the part of the estate not consumed by her for her support. That while she could use and enjoy the estate to its fullest extent for her support, and consume the whole of it if neces-sary, she could not go beyond what would be regarded as good faith toward the remaindermen. The testator having so amply provided for the support of his wife, evidently con-templated good faith on her part towards his brothers and sisters. He therefore gave her the right to consume, but not to recklessly squander or give away, the estate.

The widow holding this estate under this will, only for life, and as to the unconsumed part thereof in trust for the remaindermen, such trust would be enforced as against one coming into possession of the estate with knowledge of the trust."

It is our opinion that the principle therein discussed and applied, applies also to the case at bar. It is to be noted by

the terms of the will that George Rippel was given the estate for and during his natural life. He was given full power and authority to sell and convey any part, or all of said real estate and personal property at any time during his natural life.

He was given the right to sell it in such manner as he might desire, or use any such portion or portions of the principal in such manner as he might desire. Applying the principle laid down in 51 Ohio State, he therefore became a trustee of that part of his deceased wife's estate which came into his possession under the terms of the will, and he therefore must treat it as a trust.

Now coming to the quantum of the estate of the remaindermen. It is a fundamental principle in the constructions of wills that a will shall be so construed as to vest all estates at the earliest possible time. In examining the case of **Jeffers v Lampson, 10 Oh St page 101,** and **Lapham v Martin, 22 Oh St 99,** we find fortification for the above stated rule. Applying that rule to the case at bar, the children of Anna K. Rippel take a vested remainder which vested at the death of the testatrix, subject to the life estate of George Rippel, and also subject to being divested to such an extent as it might be properly divested under the power of sale therein contained.

The testimony discloses that George R. Rippel, after his marriage to Harriet Rippel, and acting under the power given to him by the will of his first wife, executed a contract, by the terms of which he agreed to sell one certain parcel of real estate passing under the will, to one Martini. While this matter was pending, his two children who were the remaindermen under his first wife's will, brought an action in the Common Pleas Court, by which action it was sought to have the court determine that George Rippel was not competent to enter into such a contract, and upon application therefor, the court issued a restraining order against George Rippel and his wife Harriet Rippel from consummating such contract. This action is still pending in the Common Pleas Court, and it has not been revised as to the personal representative of George Rippel.

Questions three and four in the Application for Declaratory Judgment are as follows:

Is this executrix required or empowered to complete the contract entered into between George J. Rippel and Robert J. Martini and to execute a deed of general warranty for and on behalf of said George J. Rippel?

Should this executrix proceed under **§10509-224 GC** and

complete the contract entered into by George J. Rippel and Robert J. Martini for the sale of said 195 North Ardmore Road?

Sec. 10509-224 GC uses the following language:

"When a person who has entered into a written contract for the sale and conveyance of an interest in land dies before its completion, and his executor, administrator, or other legal representative, desires to complete it, or to agree to its alteration or cancellation, with the consent of the other party, he may file a petition therefor in the Common Pleas Court or Probate Court of the county in which the land, or any part thereof, is situated" * * *

When we first considered these two questions, the court was inclined to believe that the foregoing section does not apply to the case at bar. George J. Rippel had a life estate only, with an absolute power of sale. This is a power which died at his death. However, some one would have to complete the sale if it were to be completed, and it seems that he would have had a right to complete the same had he lived. The executrix of his will being his personal representative should exercise that power.

It is to be noted that the statute does not apply to one who owns property and has entered into a contract of sale. It provides that when a person who has entered into a written contract for the sale or conveyance of an interest in land dies, the contract shall be completed by his personal representative. It is our opinion that this statute applies to one having a power of sale as well as one who has an interest and who has executed a contract for the sale of same.

It is therefore our opinion that Harriet Rippel, as the executrix of the will of George J. Rippel, is the proper one to complete the sale.

It is to be noted, however, that George J. Rippel had he lived, would have been held to be a trustee for the proceeds of the sale for the benefit of himself and the remaindermen as to the proceeds of the sale made by virtue of the testamentary power. When the executrix of his will completes the sale, she simply succeeds to his powers as a trustee for the benefit of the remaindermen under the terms of the will of Anna K. Rippel, deceased.

Upon an examination of the petition herein filed, we find the following allegation:

"Plaintiff further says that for the purpose of securing money to pay the large expenses of his last illness, he entered

into an agreement on or about the 6th day of April, 1946, with Robert J. Martini, whereby he agreed to sell the property at 195 North Ardmore Road, to said Martini for $11,500.00 * * *"

Had George J. Rippel lived, and had he been competent to do so, he would have been permitted to use a portion or all of the proceeds of said sale in the payment of the debts alluded to in the petition. Inasmuch as he was acting as a trustee for the benefit of the remaindermen, as well as for himself, he was required to exercise good faith in administering said fund. The petition alleges that he found it necessary to sell a certain parcel in order to pay heavy expenses incurred by reason of an illness, and that he entered into a contract to sell same to one Martini.

As to question five, which reads as follows:

"Does the power granted to George J. Rippel to sell and convey the above property and use the proceeds as he may desire, authorize him to dispose of the proceeds of the sale by his Last Will and Testament?"

Upon an examination of the authorities which touch upon this question we find that they are unanimous in their holdings that the interest or rights which George Rippel had under the terms of the will of Anna K. Rippel are not subject to disposal by will.

As to question six, which reads as follows:

"Did George J. Rippel have the right to dispose of his right of action against Robert J. Martini by Last Will and Testament?"

By the same argument we must answer this question in the negative.

As to question seven:

"Shall this executrix upon receipt of the purchase price of $11,500.00 keep the entire proceeds of said sale as an asset of the estate of George J. Rippel?"

It is quite obvious that our answers to the foregoing question require that this question be answered in the negative,

subject however to the necessity to use a portion of same for the payment of the debts of George Rippel, as set forth in the petition.

As to question eight:

"Did the temporary injunction granted in Case No. 170424 against George Rippel expire upon the death of George J. Rippel?"

This is a question which this court should not be called upon to answer. That is a question the solution of which, and the jurisdiction to determine which is exclusively within the court in which the petition is filed.

As to question nine:

"Should Fred G. Dunn as Auditor be ordered by this court to transfer this property back to the name of George J. Rippel on the Auditor's Duplicate?"

This question cannot be answered until the decision of the court of Common Pleas is made in the case above mentioned.

If George Rippel was incompetent to contract, then all that he did in attempting to sell his property would be null and void. If he should be declared to have been competent at the time the contract of sale was made, then it becomes the duty of his administratrix to proceed to consummate the contract which he made if it has not been abandoned by the parties.

We now come to the question as to whether or not the parties abandoned the contract during the life of George J. Rippel.

The testimony is undisputed that George J. Rippel entered into what is. on its face, a valid contract to sell the property to Mr. Martini. Plaintiff's exhibit "B" is a photostatic copy of that agreement. Plaintiff's exhibit "E" further supplements that agreement. About the time of the execution of that contract the plaintiffs in this action, who are the children of George Rippel by his first wife, brought an action in the Court of Common Pleas in which they alleged in substance that George Rippel was not competent to execute a valid contract for the sale of the real estate, and also alleged that he was under duress by his second wife. An application was filed for a restraining order and this was granted, and George Rippel was restrained from executing said contract. At the time the contract was entered into, Mr. Martini delivered to George

Rippel his check for the sum of $25.00, which check was never paid. George Rippel died on July 16, 1946. Then, on the 13th day of August 1946, Wilbur Ripple and Norma G. Browne, the remaindermen under the will of Anna K. Rippel, executed a contract in writing with Robert J. Martini, by the terms of which, for the sum of $13,500.00, they agreed to convey the property under investigation to Robert J. Martini, and to convey the same by warranty deed showing a good and merchantable title. About the time this contract was entered into, the original contract was surrendered to the remaindermen. At pages 39 and 40 of the transcript Mr. Martini gives his reason for doing same. At the bottom of page 39 of the transcript we find the following questions:

"Q. Now then Mr. Martini, when you entered—Mr. Martini what did you do about these other papers that you had from George J. Rippel, which have been marked as Exhibits here, when you entered into this agreement, which is marked Defendant's Ex. No. 1? A. At the time I signed this agreement, you requested that I turn over the original agreement to you and I turned them over to you.

Q. You surrendered both those to me for Wilbur Rippel and Norma Browne, did you not? A. Yes.

Q. I was authorized to deliver those to my client was I not? A. I guess so.

Q. That is you had no objection? A. I delivered them to you.

Q. You delivered them to me for Wilbur Rippel and Norma Browne? A. Yes.

Q. Now you don't claim, Mr. Martini, anything now under that old agreement that wou surrendered, do you? A. At the time I was told that the only way I could force that would possibly to have a law suit.

Q. Just let me interrupt—who told you? A. My Attorney.

Q. You had legal advice throughout, did you not? A. Not at the start, I had it after you served the injunction.

Q. From that on in all the proceedings? A. I was told we had a valid contract, most likely could enforce it, but have to go to Court, no doubt have to in order to enforce it. At the time my wife was seriously sick and we didn't want to bother with a Court trial, so we decided to sign the second contract, because of her serious sickness.

Q. And you decided at the same time to surrender the old contract? A. Forced to surrender the old one, in order to sign the new one.

Then on page 42 we find the following question:

Q. Notwithstanding you were willing to perform this contract that you made with these children, were you not? A. This contract here?

Q. Yes. A. Yes.

Q. You are ready and willing today to perform it, are you not? A. Yes, I naturally prefer to buy on the cheaper basis.

Q. Naturally you would rather pay $11,500.00. A. I made a straight deal with a man, I figured he had the ability to sell it to me and I would have gone through with it under the circumstances. I was more or less forced to make the second deal.

Q. You find yourself willing to perform either contract, if the Court tells you to, is that right? A. Yes."

The above quoted testimony of Mr. Martini in the opinion of this court contains the sum and substance of the entire agreement, and the circumstances under which Mr. Martini surrendered his former contract and made a new one. The contract dated on the 13th day of August 1946, contains no reference whatsoever to the original contract, and to all intents and purposes it was a substitute of a new agreement for the former agreement made about the time of the granting of the restraining order. It is our opinion that the contract was abandoned, and having been abandoned, and George Rippel having died, and the authority of the life tenant having been extinguished at his death, it is not within the authority of his personal representative to revive a contract which had been abandoned by her decedent.

It is our opinion that Wilbur Rippel and his sister Norma G. Browne being the remaindermen, had a right to enter into a valid contract with Robert J. Martini; and that the contract is a valid and enforceable one.

We are therefore compelled to come to the conclusion that if George J. Rippel was competent to make a contract, that contract as far as he was concerned was a valid and enforceable contract, and if that contract can be enforced, his personal representative is the only one who can complete it. It is to be noted, however, that this cannot be completed except with the consent of the other party. It is also to be noted that the other party did abandon the contract by his execution of a new contract with the remaindermen under the will of the testatrix.

If George J. Rippel were not competent to make a contract then the whole proceeding has no valid standing in law.

We have heretofore alluded to a suit which is pending in the Common Pleas Court, in which Wilbur Rippel and Norma Browne were parties plaintiff, and George Rippel and his second wife were parties defendant. George Rippel has died. The action is abated but the right of action survives. The case has not been dismissed, nor has it been revived in the name of his personal representative. By the filing of that suit in the Common Pleas Court, that Court has taken exclusive jurisdiction of the question of the competency or incompetency of George Rippel, and for that reason this Court refrains from deciding that question. Therefore, the final determination of the issues in this case must await the determination of the Court of Common Pleas in the case filed therein.

An order may be drawn accordingly.